[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 547.]

ERIE-HURON COUNTIES JOINT CERTIFIED GRIEVANCE COMMITTEE *v.* MILES.

[Cite as *Erie-Huron Counties Joint Certified Grievance Commt. v. Miles*, 1996-Ohio-359.]

*Attorneys at law—Misconduct—One-year suspension from date of announcement of order—Failing to maintain complete records of all funds and properties of client coming into attorney's possession—Failing to promptly pay or deliver funds, securities, or other properties in attorney's possession which client is entitled to receive—Commingling client and office funds in attorney's escrow account and failing to return funds when requested, or not accounting for funds retained in a businesslike fashion.*

(No. 96-917—Submitted June 25, 1996—Decided October 2, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-61.

———————————

{¶ 1} On October 23, 1995, relator, Erie -Huron Counties Joint Certified Grievance Committee, filed a six-count amended complaint charging respondent, Gaye Harris Miles of Sandusky, Ohio, Attorney Registration No. 0037220, with violations of DR 9-102(B)(3) (failing to maintain complete records of all funds and properties of a client coming into possession of an attorney) and 9-102(B)(4)(failing to promptly pay or deliver to the client as requested by a client the funds, securities or other properties in possession of an attorney which the client is entitled to receive). The respondent filed an answer, and a hearing was held on January 19, 1996 before a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} The evidence adduced at the hearing and stipulations before the panel were as follows: Carrie Shaw retained respondent in 1989 to pursue a personal

injury claim. Respondent settled the matter for $7,500 and assured Shaw that she would pay Shaw's chiropractor's fee of $1,377 from the proceeds. Respondent remitted $4,052 to Shaw but failed to pay the chiropractor. Two years later, the chiropractor sued Shaw and recovered $243 from Shaw's bank account. In 1994, after Shaw complained to relator, respondent paid the chiropractor. During its investigation, relator discovered that respondent's trust account was in disarray, repeatedly overdrawn, and was frequently used to pay respondent's office expenses.

{¶ 3} In February 1991, two of respondent's close friends, Valerie and Tutse Tonwe, were arrested in Delaware and contacted respondent. After respondent flew to Delaware, the Tonwes gave her blank checks on their accounts and powers of attorney, and turned over their automobiles to her. Respondent reported to the Tonwes that she had found $16,500 in their bank accounts, which she placed in her trust account. Respondent then transferred the vehicles to her own name, and moved some of the Tonwes' furniture from their offices to an airport storage unit and some to her own office.

{¶ 4} The Tonwes said that they gave possession of these assets to respondent with the intention that she use them to set up a trust account for the Tonwes' children. Respondent had a different understanding. Although the Tonwes had retained a Dan Lyons as their attorney, respondent believed that she had been retained by the Tonwes and that these assets were to cover her legal fees.

{¶ 5} In April 1991, the Tonwes found that they were running out of money, respondent having used the funds to coordinate the Tonwes' criminal defense. At that point the Tonwes demanded a return of the automobiles, cash and other property. Respondent returned some cash and one vehicle, but retained one automobile as security for her fees in representing the Tonwes, which she claimed was at an agreed-upon rate of $200 per hour.

{¶ 6} After federal authorities confiscated the car which respondent had retained, respondent sued the Tonwes for her fees and the Tonwes counterclaimed. The papers she filed with her lawsuit constituted the first detailed accounting respondent provided to the Tonwes with respect to their property. Shortly thereafter, respondent filed for bankruptcy. The bankruptcy court found that respondent's debt to the Tonwes was nondischargeable, but that the Tonwes owed fees for legal services to respondent. The net result, as the bankruptcy court found in *In re Harris-Miles* (Bankr.N.D.Ohio 1995), 187 B.R. 178, 183, was that respondent owed the Tonwes $2,595.

{¶ 7} The panel found that respondent had violated DR 9-102(B)(3) and 9-102(B)(4) in her representation of Shaw, and DR 9-102(A), 9-102 (B)(3), and 9-102(B)(4) in her handling of the Tonwes' funds by commingling client and office funds in her escrow account and failing to return funds when requested, or not accounting for funds retained in a businesslike fashion.

{¶ 8} In mitigation, respondent produced several character witnesses, including an assistant prosecuting attorney and an attorney in private practice, who testified to her being a decent and honorable person. The panel found that this was respondent's first offense and she had made restitution in the Shaw matter and will do so in the Tonwes matter. The panel recommended that respondent be suspended for one year with the entire suspension stayed, provided that during one year stayed suspension, she pay the bankruptcy court judgment, complete all continuing legal education requirements, complete one year of monitored probation after the period of suspension, and work with an accountant or an attorney familiar with law office management to assure that she implements appropriate practices and controls with respect to her client trust accounts.

{¶ 9} The board adopted the findings, conclusions and recommendation of the panel.

————————————

*Dennis E. Murray, Jr.*, for relator.

*Geoffrey L. Oglesby*, for respondent.

_____

***Per Curiam.***

{¶ 10} Canon 9 of our Code of Professional Responsibility requires the separation of client funds from those of the lawyer, not only to protect the client, but also to avoid even the appearance of impropriety. In the Shaw case the lawyer mingled the client's funds with her own and in both the Shaw and Tonwes cases she failed to maintain complete records relating to her clients' funds. Moreover, respondent did not turn over funds to the Tonwes promptly when requested nor did she promptly and accurately account to either Shaw or the Tonwes for their funds and property in her possession.

{¶ 11} It is possible that neither client suffered monetary damage as a result of respondent's lax attitude toward the client money in her control. Shaw's physician was eventually paid, the Tonwes' property was eventually returned, and the respondent was subjected to a judgment in favor of the Tonwes for the $2,595 she owed to them. But the chiropractor was paid only after Shaw underwent the tribulation of an unnecessary lawsuit and complained to relator about respondent, and the Tonwes obtained a judgment against respondent only after a trial in the bankruptcy court.

{¶ 12} The imposition on these clients was damage enough. But even if there were no damage caused by respondent's actions, we would be disinclined to relax our standards to the extent of imposing the one-year stayed suspension proposed by the board. We hold it of the utmost importance that attorneys maintain their personal and office accounts separate from their clients' accounts and that the violation of that rule warrants a substantial sanction whether or not the client has been harmed. To find otherwise would be to encourage speculation with clients' accounts.

{¶ 13} We therefore adopt the findings and conclusions of the board, but direct that the respondent be suspended from the practice of law in Ohio for one year from the date of the announcement of this order. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and STRATTON, JJ., concur.

COOK, J., dissents.

————————————

**COOK, J., dissenting.**

{¶ 14} According to the hearing panel, Miles secreted assets of convicted criminals; was reprimanded by a federal court for commiting "defalcation while acting in a fiduciary capacity"; lied to the panel about paying Dr. Heilman, claiming that a basement flood destroyed the cancelled check; and refused to return the Lincoln Continental, arguing that it was payment for "legal fees," although the services she rendered were non-legal. Moreover, Miles denied any wrongdoing other than a few bookkeeping errors.

{¶ 15} I question whether the minimal sanction recommended by the panel members resulted from their troubling conclusion that "[t]his panel was not as impressed with the Respondent's veracity as they were with her emotions." The appropriately severe sanction is an indefinite suspension from the practice of law.

————————————